UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| *IN RE* INSPIRE MEDICAL SYSTEMS, INC. SECURITIES LITIGATION | 25 Civ. 10620 (PAE) <br><br> <u>OPINION & ORDER</u> |

PAUL A. ENGELMAYER, District Judge:

In December 2025, lead plaintiff Indiana Public Retirement System ("Indiana Retirement") brought this putative securities class action against defendant Inspire Medical Systems, Inc. ("Inspire") and certain individual directors and officers ("individual defendants") (collectively with Inspire, "defendants"). Defendants now move to transfer venue to the District of Minnesota under 28 U.S.C. § 1404(a). Indiana Retirement opposes. For the following reasons, the Court grants the motion.

**I.    Background**

**A.    The Complaint**

The Complaint alleges as follows. Inspire is a medical device company that develops and markets an implantable neurostimulation system to treat obstructive sleep apnea. Dkt. 1 ("Compl.") ¶ 2. The most recent model of that device—the "Inspire V"—was scheduled to launch in 2025. *Id.*

On August 6, 2024, chief executive officer Timothy P. Herbert told investors, on an earnings call, that the Inspire V would be launched as soon as the company amassed sufficient inventory. *Id.* ¶ 18. He stated that other aspects of the launch, such as physician training and contracting, were "ready to go." *Id.* On December 3, 2024, Herbert and chief financial officer

Richard J. Buchholz attended a healthcare conference in New York City, where Herbert told investors that "we will be doing our soft launch yet [*sic*] here in 2024" and that "everything looks good." *Id.* ¶ 21. On June 17, 2025, after a soft launch of the device, Herbert told investors at a different conference that the company was "making good progress" with respect to the full launch, and that the remaining steps were "a pretty straightforward process." *Id.* ¶ 27.

On August 4, 2025, Inspire issued a press release, stating that the full launch of the Inspire V was "progressing slower than expected," which would have a negative impact on the company's yearly financial results. *Id.* ¶ 29. That day, Herbert told investors on an earnings call that the company faced "certain headwinds that slowed our efforts to transition customers to Inspire V." *Id.* ¶ 30. These included delays related to training, contracting, information technology implementation, and Medicare billing. *Id.* Herbert also stated that demand for the Inspire V was lower than anticipated. *Id.*

By August 5, 2025, the price of Inspire common stock decreased by almost a third—from $129.95 per share the previous day, to $87.91. *Id.* ¶ 31.

The Complaint brings claims against Inspire, Herbert, Buchholz, and chief strategy and growth officer Carlton W. Weatherby. *Id.* ¶¶ 11–14. The putative class consists of all investors who acquired Inspire common stock between August 6, 2024 and August 4, 2025, inclusive (the "class period"). *Id.* ¶ 1.

B.    **Procedural History**

On December 22, 2025, Indiana Retirement initiated this lawsuit. Dkt. 1. On January 5, 2026, it moved, unopposed, to serve as lead plaintiff, and for Bernstein Litowitz Berger & Grossmann LLP to serve as lead counsel, Dkts. 11–14, which the Court granted, Dkt. 27.

2

On January 22, 2026, defendants moved to transfer, Dkt. 21 ("Mem."), attaching declarations and exhibits, Dkts. 20-1 ("Grannum Decl."), 20-2 ("Phillips Decl.").  On February 5, 2026, Indiana Retirement opposed, Dkt. 28 ("Opp'n"), attaching a declaration and exhibits, Dkt. 29 ("Graziano Decl.").  On February 12, 2026, defendants replied, Dkt. 30 ("Reply"), attaching another declaration and exhibits, Dkt. 31 ("Supp. Phillips Decl.").

## II.     Applicable Legal Standard

Section 1404(a) of Title 28 states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or . . . to which all parties have consented."  District courts have wide latitude to decide whether to transfer venue.  *See In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir. 1992) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)).

In deciding a motion to transfer, courts assess "whether the action could have been brought in the transferee district and, if yes, whether transfer would be an appropriate exercise of the Court's discretion."  *Robertson v. Cartinhour*, No. 10 Civ. 8442, 2011 WL 5175597, at *3 (S.D.N.Y. Oct. 28, 2011).  To determine whether transfer is a valid exercise of discretion, courts balance various factors, including:

> (1) the convenience of witnesses; (2) the convenience of the parties; (3) the location of relevant documents and the relative ease of access to sources of proof; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Id.* at *4; *see also Kreinberg v. Dow Chem. Co.*, 496 F. Supp. 2d 329, 330 (S.D.N.Y. 2007).  The movant bears the burden of showing, by clear and convincing evidence, that transfer is appropriate.  *See N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 113–14 (2d

Cir. 2010).  "In deciding a motion to transfer, a court may consider material outside of the pleadings," *Mohsen v. Morgan Stanley & Co.*, No. 11 Civ. 6751, 2013 WL 5312525, at *3 (S.D.N.Y. Sept. 23, 2013) (collecting cases), including declarations by the movant, *Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*, 928 F. Supp. 2d 735, 737 n.1 (S.D.N.Y. 2013).

**III.    Discussion**

This action could have been brought in the District of Minnesota, and the § 1404(a) factors strongly favor transfer there.

**A.    Whether the Action Could Have Been Brought in the Transferee District**

Section 27 of the Exchange Act provides that a civil suit may be brought, *inter alia*, "in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business."  15 U.S.C. § 78aa(a); *see also SST Glob. Tech., LLC v. Chapman*, 270 F. Supp. 2d 444, 453 (S.D.N.Y. 2003).  Under that provision, "the commission of any non-trivial act in the district establishes venue for an Exchange Act claim, even if this act does not go to the core of the alleged violation."  *Ato Ram, II, Ltd. v. SMC Multimedia Corp.*, No. 03 Civ. 5569, 2004 WL 744792, at *3 (S.D.N.Y. Apr. 7, 2004).

The Complaint brings claims under §§ 10(b) and 20(a) of the Exchange Act and Rule 10b–5.  Compl. ¶ 1.  Inspire is headquartered in Minnesota, and the individual defendants all work and reside in that state.  *Id.* ¶ 11; Phillips Decl. ¶¶ 3–6.  Indiana Retirement, as is undisputed, thus could have filed this case in the District of Minnesota.

**B.    Whether Transfer to the District of Minnesota Is Appropriate**

The § 1404(a) factors overwhelmingly favor transfer.  The Court addresses those supporting transfer, the three neutral factors, and, last, the one factor weighing against transfer.

***Locus of operative facts***:  In a securities action, the locus of operative facts is "where the alleged misrepresentations were made," "not where the statements at issue [were] received." *Erickson v. Corinthian Colleges, Inc.*, No. 13 Civ. 4308, 2013 WL 5493162, at \*6 (S.D.N.Y. Oct. 1, 2013) (citation omitted).  The alleged misstatements here were predominantly made by Minnesota-based executives located at Inspire's headquarters in Minnesota.  *See* Compl. ¶¶ 18, 20, 24–25, 29–30 (alleging misleading statements made on earnings calls and in press releases); Phillips Decl. ¶¶ 7–8 (attesting that every statement made on earnings calls and in press releases during the class period issued from Inspire's Minnesota headquarters).  Indiana Retirement argues that venue in this District is proper because (1) Herbert and Buchholz made statements at a December 3, 2024 healthcare conference in this District, and (2) Inspire's common stock trades on the New York Stock Exchange.  Compl. ¶ 9.  But an isolated appearance in New York City does not outweigh the myriad other statements that defendants made in Minnesota.  *See, e.g.*, *In re AtheroGenics Sec. Litig.*, No. 05 Civ. 61, 2006 WL 851708, at \*4 (S.D.N.Y. Mar. 31, 2006) (locus was corporate defendant's Georgia headquarters, notwithstanding chief executive officer's multiple in-person appearances in New York).  And "the mere fact" that Inspire's stock traded on the New York Stock Exchange does not tilt this factor against transfer.  *See In re Mellanox Techs. Ltd. Sec. Litig.*, No. 13 Civ. 925, 2013 WL 12333517, at \*1 (S.D.N.Y. Oct. 11, 2013); *see also City of Pontiac Gen. Employees' Ret. Sys. v. Stryker Corp.*, No. 10 Civ. 376, 2010 WL 2035130, at \*4 (S.D.N.Y. May 21, 2010) ("*Stryker Corp.*").  The locus of operative facts here is Minnesota.  This factor strongly favors transfer.

***Witnesses' and the parties' convenience***:  The key witnesses in this case are the Inspire employees and officers—including the three individual defendants—involved in drafting, discussing, and disseminating the alleged misstatements.  They almost exclusively reside and

work in Minnesota.  *See* Phillips Decl. ¶¶ 4–6, 9.  The sole exception is potential witness Ezgi

Yagci, Inspire's vice president of investor relations; he lives in Florida but regularly travels to

Minnesota for work.  *Id.*  And Indiana Retirement is located in neither district, so its convenience

is "not a factor" in determining whether transfer is appropriate.  *City of Pontiac Gen. Emps. Ret.*

*Sys. v. Dell Inc.*, No. 14 Civ. 3644, 2015 WL 12659925, at *5 (S.D.N.Y. Apr. 30, 2015) ("*Dell*").

This factor also strongly favors transfer.

    ***Efficiency and the interests of justice***:  Where "the material events" and "most of the

witnesses and documents . . . are located in the transferee forum, the interests of justice and

judicial efficiency support a transfer."  *Stryker Corp.*, 2010 WL 2035130, at *5.  For the reasons

above, that is so here.  For instance, "the long-distance travel required of employee witnesses

could impede trial in this District and would impose substantial expense on witnesses or the

parties calling them."  *SBAV LP v. Porter Bancorp, Inc.*, No. 13 Civ. 372 (PAE), 2013

WL 3467030, at *8 (S.D.N.Y. July 10, 2013) (quoting *Glass v. S & M NuTec, LLC*, 456 F. Supp.

2d 498, 503–04 (S.D.N.Y. 2006)) (cleaned up).  Should the case reach trial, transfer will thus

facilitate a "live trial[] at lesser expense"—"an important factor in determining whether to

transfer a case."  *Id.*[1]

    ***Location of relevant documents and access to proof***:  Most documents relevant to this

action will likely be located in Minnesota, where Inspire is headquartered.  *See In re Vivint*

*Solar, Inc. Sec. Litig.*, No. 19 Civ. 5777, 2020 WL 7770992, *3 (E.D.N.Y. Dec. 30, 2020)

("Securities fraud litigation almost invariably involves production and review of a vast number

---

[1] Indiana Retirement argues that the District of Minnesota's relatively greater docket congestion weighs against transfer.  *See* Opp'n at 10–12 (*e.g.*, comparing 9.3-month average time courts in the District of Minnesota took to decide civil motions in 2025, with this District's 5.6-month average that year).  But that consideration merits "minimal[]" weight, *Dell*, 2015 WL 12659925, at *7, and is far outweighed by the efficiencies gained here by transfer.

of documents, almost all of which are in the defendants' possession."). Given modern electronic discovery procedures, however, this factor merits limited weight. *See id.* It favors transfer, but not materially.

*Availability of process to compel unwilling witnesses*: Under Federal Rule of Civil Procedure 45, a district court may only subpoena witnesses within 100 miles of where they reside, are employed, or regularly transact business in person. *See* F.R.C.P. 45(b)(2) & (c)(1)(A). Indiana Retirement argues that because the 100 miles surrounding this District are more populous than those bordering the District of Minnesota, this Court, relative to one in Minnesota, could enforce subpoenas issued to a greater number of Inspire employees (who are located nationwide), Inspire-associated healthcare providers and contractors, and patients. *See* Opp'n at 17–20. It does not dispute, however, that these witnesses, and the other potential non-party witnesses it lists, "might appear voluntarily," whether through remote testimony or other means, obviating any need for compulsory process. *Id.* at 20. And it does not identify any witness as to whom recourse to compulsory process is apt to prove necessary. This factor is thus neutral. *See, e.g.*, *Soto v. Bey Transp. Co.*, 1997 WL 407247, at *4 (S.D.N.Y. July 21, 1997) ("Nothing has been presented to suggest that any of the non-party witnesses would be unwilling to testify. Therefore, this factor does not enter the Court's analysis.").

*The relative means of the parties*: Indiana Retirement is a "highly sophisticated institutional investor that manages approximately $55 billion in assets" and frequently litigates securities class actions nationwide. *See* Dkt. 12 at 5. Inspire is a publicly traded company, and the three individual defendants are corporate officers there. Compl. ¶¶ 11–14. This factor is neutral. *See Erickson*, 2013 WL 5493162, at *7 ("absent demonstration of an undue burden on the plaintiff class, this factor is neutral in a securities class action").

***The transferee district's familiarity with the governing law***:  This factor is neutral, as "every federal court is presumed equally capable of applying federal law."  *In re ChannelAdvisor Corp. Sec. Litig.*, No. 15 Civ. 506, 2015 WL 4064625, at *3 (S.D.N.Y. July 2, 2015).

***Indiana Retirement's choice of forum***:  Indiana Retirement's decision to bring this action in this District is the only factor disfavoring transfer.  But a party's choice of forum merits limited weight where (1) "the operative facts lack a meaningful connection to the chosen forum," or (2) "in a stockholder class action, where members of the class are dispersed throughout the nation."  *Erickson*, 2013 WL 5493162, at *2 (cleaned up).  Both are the case here.  *See, e.g.*, *ChannelAdvisor*, 2015 WL 4064625, at *1–2; *Woldanski v. TuSimple Holdings, Inc.*, No. 22 Civ. 9625, 2023 WL 1795191, at *4 (S.D.N.Y. Feb. 7, 2023); *Garity v. Tetraphase Pharms. Inc.*, No. 18 Civ. 6797, 2019 WL 2314691, at *2–3 (S.D.N.Y. May 30, 2019).[2]

***Overall assessment***:  The § 1404(a) factors lopsidedly favor transfer here.  In federal securities class actions where the plaintiff lacks a connection to this District, and where defendant seeks transfer to the District in which it is headquartered and "where the bulk of the alleged wrongdoing occurred," courts in this District regularly grant such motions.  *Dell*, 2015 WL 12659925, at *7; *see also AtheroGenics*, 2006 WL 851708, at *3 (similar).  Such is the case here.  *See, e.g.*, *Dell*, 2015 WL 12659925, at *7; *AtheroGenics*, 2006 WL 851708, at *5–6; *Erickson*, 2013 WL 5493162, at *7; *Stryker Corp.*, 2010 WL 2035130, at *5.

---

[2] The cases cited by Indiana Retirement in support of greater deference are easily distinguished. *See, e.g.*, *In re Warrick*, 70 F.3d 736, 737 (2d Cir. 1995) (reversing transfer of ERISA action, where transferor court's "sole stated reason"—that binding circuit precedent elsewhere would dispose of the case—was unrelated to any § 1404(a) factor); *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 75–76 (2d Cir. 2001) (en banc) (remanding dismissal based on *forum non conveniens*, where plaintiffs had sued in district where defendants resided and important evidence was located).

**CONCLUSION**

For the above reasons, the Court grants defendants' motion to transfer venue. The Clerk of Court is respectfully directed to terminate the pending motion at docket 20, and to transfer this case to the District of Minnesota.

SO ORDERED.

_____
PAUL A. ENGELMAYER
United States District Judge

Dated: May 20, 2026
       New York, New York